Fredrika M. Miller, the estate of Ozell C Miller
2415 Moores Mill Rd Suite 265 #166
Auburn, Alabama 36830
702 601 3681
bootsmylove69@gmail.com

RECEIVED

2021 SEP 28 P 2: 20

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| FREDRIKA M MILLER, THE ESTATE OF OZELL C MILLER<br><br>Plaintiffs,<br>vs.<br>ALLSTATE INSURANCE CORPORATION ITS AGENTS AND SUBSIDIARIES.<br>Rebecca A Chastain  Adrianne Dugan<br>Defendants | Case No.:<br><br>CIVIL ACTION<br>2:21-cv-646-ECM-SMD |

For violations of the US Fair Housing Act, Privacy Act and Breach of Contract and doing business in Bad Faith.

Comes now before this court Fredrika M. Miller and for the estate of Ozell C. Miller for claims of violations by Allstate Insurance Corporation and their agents locally in Jackson and Montgomery, Alabama.

The Allstate Corporation 2775 Sanders Road North Plaza Northbrook, IL 60062-6127 Allstate branches Adrianne Dugan 9190 Boyd-Cooper Pkwy, Montgomery, AL 36117 and Rebecca Chastain 4413 N College Ave, Jackson, AL 36545

Plaintiffs in this civil action wish to file suit against the aforementioned corporation, its agents and subsidiaries.

1. The Defendants refused to investigate intentional poisoning claim and property destruction.

A) When the Plaintiffs reported that the property was being overrun with criminal activity the Defendants refused to send out an investigator or claims adjuster. This was a constant threat reported to the Montgomery Police Department (MPD) but the Defendants never acted upon any of these threats.

B) The Defendants claimed [they] had to wait until the MPD acted in response, filed reports and made an arrest before the Defendants would create any kind of investigation.

C) When called, the Defendant's agent, Adrianne Dugan, on the phone replied with: "Hasn't that house been torn down yet?" this was in 2019 and the house was undergoing constant criminal attacks by known and unknown perpetrators. The police were called by neighbors and witness names were given to the police and the Defendants however the Defendants refused to act.

D) The Defendants were made aware of the Protection From Abuse (PFA) order when the first crimes were reported to the Defendants as well as the MPD yet no action was taken even though Allstate Corporation has a policy procedure requiring the Defendants and any of their agents to act with haste and with privacy to protect a person or persons being threatened by criminal acts.

E) The Plaintiffs explained that [they] were two women living alone with disabilities and needed a consistent and real investigation into the problems the Plaintiffs faced at the property insured by the Defendants. The Defendants refused any investigation or protection for the Plaintiffs in violation of the Violence Against Women act of 1994, Fair Housing Act of 1968 and Americans With Disabilities Act of 1990.

F) In August 2015, Edward Merrill an agent of the Defendants and Brandon Hodge with the city of Montgomery came to the Plaintiff's residence at 3156 Cloverdale Rd Montgomery, Alabama. Mr. Merrill, after seeing the condition of the house asked, "Who did this to you all?" He was referencing some physical property damage, water damage to the foundation and the backyard. He then paused and stated "They ran you all out of the neighborhood, didn't they?"

The Plaintiffs explained all the troubles they were having with the work the landscaper Michael Stroup with Irrigata llc. had done, the pesticide poisoning permeating the entire property including the wood structure, the basement water leaking in chemically charged water and the damaged seals and insulation on the perimeter. The Plaintiffs also showed how Mr. Stroup had dug the backyard up to redirect the water towards the house causing the problems. The Plaintiffs explained and showed the agents for the Defendants the air conditioner damage, the police responses and lack thereof. The Plaintiffs explained they were two women living alone and being threatened and targeted by William Bellingrath von Gal and there was a PFA order against him and that they were supposed to handle the insurance claim situation with that in mind. The Plaintiffs told Mr. Merrill that [they] were being surveilled and stalked by unknown people in and around the neighborhood 24/7. Mr. Merrill exclaimed "Who, who? Give me names." The Plaintiffs said they don't have names because it is being done secretively. Mr. Merrill then said with frustration "You mean like these people?" Pointing to and referencing the unmarked and obvious vans that had pulled up and continuously parked outside of the Plaintiffs home. Mr. Merrill then refused to help and left with Mr. Hodge in tow leaving the Plaintiffs alone without any help or investigation.

G) In the fall of 2016 the Defendants cancelled the Plaintiff's homeowner's policy claiming that the house had been abandoned. The Defendants told the Plaintiffs to fix the windows, pick up the mail from the front porch and mow the grass. The Plaintiff explained that she was told if she showed up to the property she would be raped again, or worse. The Plaintiffs explained that [they] were only staying in Gulf Shores at the Plaintiff's condo due to the threat level imposed by Mr. von Gal and that they were only waiting for the Defendants to do the right

thing and investigate the activity at the residence, follow up on the claims and help stop the ongoing damage to the property caused by Mr. Stroup. Mr. Stroup had already been found guilty of doing the damage in a court of law along with Vaughn Heating and Air. The Defendants then cancelled the homeowner's policy without any investigation whatsoever.

H) The Defendants allowed the Plaintiff's umbrella policy to lapse while the Plaintiff's mother and original policy holder was in the hospital in UCLA in Los Angeles. The Plaintiff made phone calls to the Defendants and paid their bills on time as they had done for 15+ years. The Plaintiff Ozell Miller paid her bills over the phone always at that time. Ozell was old school type and didn't trust the electronic accounting of bills. She would always say that you have to talk to a person. However when called in late 2019 the agents at Adrianne Dugan's agency branch and Charmane Adams neglected to post the payment causing a lapse in the coverage that the Plaintiff Fredrika was not made aware of until nearly four months later. No phone attempts were made or emails sent to warn the Plaintiffs there was an impending lapse in coverage. The Plaintiff would only find out months later that mail was being sent to her Montgomery address only however Adrianne Dugan's office and agents were aware of their location and medical situation in Los Angeles at UCLA. The Plaintiff only found out the policy had been terminated after calling to update the policy after Ozell's passing. During this time the Plaintiffs were living in the hospital ICU and undergoing treatment for cirrhosis of the liver and liver cancer. The Plaintiff Ozell was also misdiagnosed with TB (Tuberculosis) which was actually regional Histoplasmosis and Blastomycosis from living in Alabama. The TB misdiagnosis kept the Plaintiff Ozell on lockdown for weeks at a time disrupting and slowing her cancer treatments which caused the cancer to spread more vigorously causing her death on December 25th 2019. All of

this was going on while the Defendants were aware of the Plaintiffs condition and position at the hospital in Los Angeles.

I) The Defendants then forced the Plaintiff Fredrika to purchase a rewritten policy minus the umbrella portion and at a higher individual rate for the car as the first one had been cancelled in the fall of 2019. The higher rates were also due to the lower credit score the Plaintiff Fredrika received as the Defendants refused to investigate the destruction of the property destroying her finances trying to repair damage to their house on her own without the Defendants help. The Plaintiffs credit score was also based on missed payments causing the payments of the new policy to have a higher premium and deductible. The Plaintiff explained all the particulars about their situation, the hospital, their location, condition, the phone calls made to the Dugan branch of Allstate and how the payment had not been logged correctly. The Defendants maintained they received no payment and sent notices to Alabama knowing the Plaintiff had expressed they were in California at UCLA being treated for more than twenty months.

J) The Plaintiff then asked for all documentation on the policy including coverage and payment records. The offices in the California branch said it should be no problem however the Eastern Division district manager, Kyle Woods told the Plaintiff Fredrika absolutely not. He said not even the FBI could force him to give her the records. The Plaintiff then put a call in to his boss Jeremiah, who his secretary promised would call her back. But Jeremiah's call was stopped by Kyle Woods as he was aware of the calls to his boss and refused to let him know what was really happening. The Plaintiff has never received any records of any kind even though she has asked frequently and has been given mixed and convoluted answers.

K) Upon her return to Alabama the Plaintiff found her home boarded up and a condemned sign posted by Brandon Hodge who claimed to "Never been to house before that time to post sign in 2019" even though he was with Edward Merrill and gave the Plaintiff his business card. Mr. Merrill now works as an attorney in Alabaster, Alabama and refuses contact from the Plaintiff regarding her home.

L) The Defendants claim they "Never had anyone named Edward Merrill working for them" even when told by the Plaintiff that she has his business card, from Allstate, with their logo on it. The Defendants have taken a position or posture of defense with no reason offered. The Plaintiff must conclude the Defendant's actions signify that [they] are hiding what they have done and are trying to keep their mistakes well hidden within their system.

M) After the new policy had been written the agent Adrianne Dugan insisted that the Plaintiff's boyfriend's name be included on the policy if he was ever to drive the car. However Ms. Dugan wrote on the policy that Gary Sauer was my husband and charged the Plaintiff accordingly. The policy was written incorrectly and the Plaintiff had to have it rewritten but Ms. Dugan refused saying my husband had to be on the policy. The Plaintiff told Charmane she was not married, Gary Sauer never drives it and I want him off the policy. Instead of taking him off the policy Ms. Dugan's agency rewrote a second policy with just the Plaintiff's name on it. Then Allstate started billing the Plaintiff for two policies, one in the Plaintiff Fredrika Miller's name and one in Gary Sauer's name. The Plaintiff wasn't aware of the second policy as she had it set up to auto pay electronically. It wasn't until the Plaintiff was going through statements that she found the discrepancy and extra account policy. When the Plaintiff called to have the policy cancelled in Gary's name Adrianne Dugan claimed that Gary himself had to call and cancel the

policy. Gary never spoke to the agency before. Gary never wanted or expected inclusion or a policy of any kind. Gary did call the agency and request that his policy be cancelled and any charges returned. He called more than two times to request this and the agent still refused to close the account without reason. It was apparent that the agent Adrianne Dugan and her agency did not want to lose a policy.

N) Gary Sauer, for the Plaintiff and in his own name and of his own accord called the corporate headquarters for Allstate in Illinois and spoke with a Ben and a Chris and a Jen. Some or all worked in a special department of elevated customer service. Gary explained to them that the Plaintiff's ex-fiancé Mr. von Gal, knew where the Plaintiff had her insurance and had knowledge of the Plaintiff's whereabouts through contact with Adrianne Dugan's office. Mr. von Gal is very good at tracking and following the Plaintiff Fredrika wherever she goes. Gary then explained the situation at length three separate times to the three different agents over the course of a week. Gary explained that he wanted his name off of any policy at Allstate and that the Plaintiff Fredrika wanted all of her information hidden from anyone's prying eyes. The first agent Jen said that the policy could just be rewritten in another district so the Dugan agency would be completely left out of the process, later the Plaintiff found out that was not true. Then Gary asked that the Plaintiff's account, with verbal permission to the associate for him to speak on the Plaintiff's behalf, be locked so no information could be accessed without first speaking to the Plaintiff Fredrika directly. The Defendants agent explained that [they] could lock it with a code that only the Plaintiff knew about for access and no one could view it or even know she had a policy with Allstate. They also explained to use a local agent to do that work and write that policy. Fredrika then contacted Defendant Rebecca Chastain in Jackson, Alabama

to rewrite the policy. The Plaintiff explained in great detail that she was scared for her life from Mr. von Gal, that corporate told her to call that particular agency and to have her secretly rewrite the policy without Defendant Adrianne Dugan's knowledge. After a couple of days the Plaintiff received no call back from Defendant Ms. Chastain's office but did however hear from Adrianne Dugan's office asking if the Plaintiff still wanted to keep Gary's name on the new policy. Defendant Ms. Chastain contacted Defendant Ms. Dugan after she was told specifically about the circumstances involved, the PFA order and the threats of bodily harm and potential for Defendant Ms. Dugan to leak sensitive information to Mr. von Gal. This was something he was very capable of as he is wealthy, knows many of the same people that the Defendant Adrianne Dugan knows and has paid people off in the past for information on the location of the Plaintiff Fredrika. Gary called Allstate and they opened up a claim to solve all these issues. However when the agent called and spoke to Gary he noted that as an agent of Allstate, Defendant Adrianne Dugan had access to the Plaintiff Fredrika's information at any time she wanted it. There was no protection as it was offered, Defendant Rebecca Chastain did not keep personal records in her office as requested and never even spoke with the Plaintiff nor did she write a policy for the Plaintiff. Everything the Plaintiff and Gary Sauer had been told up until the conversation with the special claims action was a lie. When confronted, the claims agent refused to acknowledge that a person could pay off an agent for information however Mr. von Gal had information only Ms. Dugan had up until that point that no one else had. There was no other explanation and the agent never admitted fault. It is also important to note that during the third phone call late at night while the agent was on the phone explaining, correcting and rewriting the policy, texts and emails started coming in from Adrianne Dugan. This was after

weeks or a month of no contact with her or her office asking about the policy, changes and if the Plaintiff and Gary still wanted to keep the policy and included a payment amount and billing statement. Ms. Dugan was watching the Plaintiff's account for activity, that made it obvious. Allstate was never protecting the Plaintiff or her best interests.

O) Ms. Dugan's office manager Charmane Adams told the Plaintiff during a previous phone call that the new umbrella policy would never have paid out the way it was written and that the agency was aware of the mistake but they was still charging the Plaintiff $55.00 a month extra for portions that were unnecessary with this knowledge. When the Plaintiff asked for the money to be refunded or applied to the present account Ms. Dugan refused and never contacted the Plaintiff again.

## IN SUMMARY

The Plaintiff Fredrika M Miller is filing suit in this court in response to the Defendant Allstate Insurance and its agent's inability to protect the Plaintiff and her mother Ozell. The Defendant has continuously overcharged, mismanaged, leaked information and misinformed the Plaintiff in regards to her accounts over the past decade and longer.

Through the Defendants inaction and weak policies the Plaintiff's property was left unprotected, open to outside interests and was not repaired or investigated at any level whatsoever. The Defendants tried to say that the Plaintiffs waited too long to file a claim yet the Plaintiff Ozell Miller filed a claim in 2009 referencing much of the above issues and then subsequently filed a complaint against the Defendants with the Department of Insurance in 2010 for not acting on that original claim. William Bellingrath von Gal's friend, and ex circuit

court judge Lucie McLemore, has been the Assistant Attorney General at the Alabama Department of Insurance since 2008.

The Defendants lied, held back documentation and acted unprofessionally at nearly every level, from the agent on the street, all the way to the top of the company. A several page letter was sent to Thomas J. Wilson the CEO of Allstate explaining all of these issues. (Included as exhibit) The letter was never responded to or acknowledged. All attempts to be heard, opportunities to repair this relationship and attempts to be refunded monies owed have been exhausted. It is with this in mind that the Plaintiff must now take action in a court of law at the Federal level.

The Defendants and their agents did so act in Bad Faith willingly and knowingly mislead the Plaintiffs through written contract violations. The Defendants used verbal and written customer service objectives to obtain and keep the Plaintiff on as a customer without regard for their personal physical or mental well-being or taking into account the threats made to their lives. The Defendants and its agents did refuse to turn over any documents pertaining to the account of Ozell C. Miller, Fredrika M Miller or their property located at 3156 Cloverdale Rd Montgomery, Alabama 36106.

The Defendants refuse to acknowledge an employee agent of the company, Edward Merrill who was sent out by the Defendants to assess damage and start a claim. No claim was started by Mr. Merrill.

DAMAGES

The Plaintiffs wish to have all monies paid in premiums, deductibles, fines and fees returned in full starting with the first contact in 2009 for a fallen tree that was never properly addressed or paid to present.

The Plaintiffs are also asking for all records on any and all accounts held at Allstate starting with the initial contract to present. All documentation, remittances, phone records, payment records, assessments, claims, emails, inter office communications as it pertains to the Plaintiffs.

The Plaintiffs are also asking for $13,000,000.00 in compensatory damages.

The Plaintiffs seek punitive damages in the amount of $16,000,000.00 for Bad Faith business practices and full disclosure publically for any new or existing accounts held by Allstate in both residential and commercial insurance markets.

*Fredrika M. Miller*                 09-28-2021
Fredrika M Miller for/and the Estate of Ozell C Miller          Dated

2415 Moores Mill Rd, Ste 265 #165
Auburn, AL 36830
702 601 3689